

The Estate of Bonell Rashti, §
§
Plaintiff, §
§
versus §    Civil Action H-18-1101
§
Bank of America National Association, et al., §
§
Defendants. §

# Opinion on Partial Dismissal

1. *Introduction.*

A house owned now by an estate was flooded in 2015 and 2016. The late owner did not carry the insurance that was required by the loan. A policy held by the lender covered the flood damage. The lender kept the proceeds because its lien allowed it to maintain its security; the insurance proceeds replaced the value lost by the damage to the house – an offset. The executor wants to recover the proceeds from the lenders and insurers.

In April 2007, Edward Rashti signed a home-equity note in favor of Countrywide Home Loans, Inc., for $260,000. To secure the note, Edward Rashti and Bonell Rashti, his wife, granted it a lien on the property. This land is located one block south of Brays Bayou in southwest Houston. The lien is in favor of Mortgage Electronic Registration Systems, Inc., as nominee of the note holder. Countrywide was eventually succeeded by the Bank of New York Mellon. Bank of America National Association serviced the loan until Specialized Loan Servicing, LLC, acquired it in late 2016.

Edward Rashti died in 2013, and Bonell Rashti died in 2015. A granddaughter of the late Rashtis – Jacqueline Elizabeth Mitchell – is the executrix. Shortly after Bonell Rashti died, the house flooded on May 25, 2015. It flooded again on April 18, 2016. The estate filed insurance claims in 2015 and 2016 for the damage to the house.

The forced insurance plan paid $93,473.38 to Bank of America and the estate of Bonell Rashti. Bank of America received $73,473.38 of this and

transferred it to Specialized after Mellon acquired the loan. Specialized paid the estate $16,750.00. The estate seeks the remaining $56,723.38 from Bank of America, Mellon, and Specialized. The estate also claims the insurers – QBE Americas, Inc., BRIT Insurance, and Certain Underwriters Lloyd's London – owe it $76,707.95.

The estate defaulted on its loan payments in June of 2016. The estate has not repaired the house even though the loan requires it. It is not a breach of contract to hold the funds in escrow until the house is repaired. The estate does not describe a transaction in which the insurers had to pay it before the lender's collateral was restored. Neither the Rashtis nor the estate insured the property as required by the mortgage. It describes a transaction where the carriers will distribute funds to contractors whom they approve for work they agree needs repairs. The estate has no claim against the defendants with a property interest – Bank of America, Mellon, and Servicing – for exercising their authority in the documents. The estate is not entitled to relief for breach of contract.

The estate also brought these claims:
- Texas Deceptive Trade Practices Act
- RESPA and Regulation X of the Code of Federal Regulations
- Texas Debt Collections Act
- Fraud
- Negligent Misrepresentation
- Grossly Negligent Misrepresentation
- Breach of Duty to Cooperate
- Breach of Fiduciary Duty
- Promissory Estoppel
- Civil Conspiracy

2. *Tort Claims.*

Tort remedies are not available when a party does not perform under a contract.[1] Without the documents, no relationship exists between the parties.

---

[1] *Sharyland Water Supply Corporation v. City of Alton*, 354 S.W.3d 407 (Tex. 2011); *Southwestern Bell Telephone Company v. DeLanney*, 809 S.W.2d 493 (Tex. 1991).

Even if the defendants represented wrong information, this would only breach the contract. The nature of the estate's injury is economic; it wants money it thinks the documents say it gets.

3. *Violation of Texas Deceptive Trade Practices Act.*

The estate alleges that Bank of America, Mellon, and Specialized violated the Texas Deceptive Trade Practices Act by: (a) representing that their services had benefits which they did not; (b) saying that the documents give the estate rights it does not have; (c) saying that services have been performed when they have not; (d) inducing Bonell Rashti to use their services by concealing information; (e) acting unconscionably; (f) violating Article 21.21 Section 16 of the Texas Insurance Code; and, (g) misrepresenting the identity of the insured and the insurer. Essentially, they listed the statute's coverage rather than pleading the facts of the parties.

The estate is not entitled to relief. The estate is not a consumer as defined by the statute. The underlying transaction is a home-equity loan. Money is not a good or service.

No facts show how Bank of America, Mellon, or Specialized violated the Deceptive Trade Practices Act. No facts show that a false, misleading, or deceptive act occurred. The estate would need to rely on testimony of the deceased parents to show this claim, and it cannot.[2] The documents allowed the defendants to hold the insurance proceeds until the property was repaired, and it has not been. What the defendants told the estate was true; it will get the proceeds when it has repaired the house according to the documents' specifications. Another solution is likely to be required because Hurricane Harvey flooded the house again and the new codes may not allow repair without raising it several feet.

4. *Fraud.*

The estate alleges that Bank of America, Mellon, and Specialized fraudulently told it that: (a) the insurance flood proceeds would be released; (b)

---

[2] TEX. R. CIV. EVID. 601(b); *Lewis v. Foster*, 621 S.W.2d 400, 404 (Tex. 1981).

they would perform their duties in good faith; and (c) they would make sure the insurers would promptly and completely pay the insurance proceeds.

The facts show that Bank of America, Mellon, and Specialized met their obligation. The claims are impossibly puerile.

5.  *Grossly Negligent Misrepresentation and Negligent Misrepresentation.*

The estate says that the Bank of America, Mellon, and Specialized said: (a) the insurance proceeds would be released to the estate; (b) they would cooperate and act in good faith; (c) they would make sure the flood insurance was timely and completely paid; and (d) the estate of Bonell Rashti, not Edward Rashti, was the insured under the policies in question.

Complaining that the defendants represented that the insurance proceeds would be released does not show how the defendants did not exercise reasonable care in what it told the estate. It also does not show how the defendants knew what they told the estate to be false. To succeed, the estate needed to show that what the defendants told it was a misstatement of an existing fact, not a promise of future conduct. Besides the vague, conversational "representations," the estate did not change its position in reasonable reliance, and the whole process was covered by formal contracts, making their claims unavailable.

6.  *Civil Conspiracy.*

The estate alleges that the Bank of America, Mellon, and Specialized conspired against it by withholding the proceeds.

What the defendants said concerning the insurance proceeds is not unlawful. No facts show that the defendants collectively agreed to cheat the estate out of insurance proceeds. What the defendants did is not unlawful. Holding funds in escrow when permitted to is not a conspiracy. It is an accounting and contractor problem.

The acts of the banks and insurer were both legal and within the contract. The world works by negotiated agreements. Those are conspiracies only if the conversations proposed illegal acts with the intent to act on them.

7. *Breach of the Implied Duty to Cooperate and Fiduciary Duty.*

The estate alleges that the Bank of America, Mellon, and Specialized breached their fiduciary duty and the implied duty to cooperate by withholding the insurance proceeds and not sending an adjuster to inspect the house.

The estate and lender have equal title to the money. The defendants are not fiduciaries. The documents allow the defendants to hold the funds in escrow until the estate repaired the house to the lender's satisfaction. It did not. Even if it had, the implied duty to cooperate is merely the theoretical basis of a claim for breach of contract – not an independent claim.

8. *Promissory Estoppel.*

The estate alleges that the Bank of America, Mellon, and Specialized are estopped from denying their promise to the estate to give it the insurance proceeds.

A written, signed contract exists that covers the promise in question.[3] The estate has not shown what other promise the defendants made in which they promised to sign a written agreement. The estate also does not show that it reasonably and detrimentally relied on an oral promise.

9. *Violation of RESPA and Regulation X of the Code of Federal Regulations.*

The estate alleges that Bank of America, Mellon, and Specialized violated RESPA and Regulation X of the Code of Federal Regulations by (a) not explaining why its requests for loan applications were rejected; and, (b) not responding to the estate before posting the property for foreclosure even though the estate had submitted a complete loss mitigation application.

The estate has not produced its loan modification requests, described in detail the modification it wanted, or said what data the defendants wanted from it. The estate has not shown that it applied for complete loss mitigation. It has merely said that an application is pending. It also has not shown how it was damaged.

---

[3] *Rachal v. Reitz*, 403 S.W. 3d 840, (Tex. 2013); *Wheeler v. White*, 398 S.W.2d 93, (Tex. 1965).

10. *Violation of Texas Debt Collection Act.*

The estate says that Bank of America, Mellon, and Specialized did not give it the required notice of default and opportunity to cure; instead, the defendants accelerated the loan and posted the property for foreclosure.

The estate does not identify a specific violation. It was in default. The defendants could foreclose on the property.

11. *Conversion.*

The estate alleges that Bank of America, Mellon, and Specialized converted the insurance proceeds because the defendants withheld them.

The proceeds were made jointly payable to the Bank of America, and America transferred the money to Specialized. This is not conversion. The parties exercised the rights allowed under the contract. Conversion is applicable mostly in disputes involving tangible personal property. This is a bookkeeping dispute.

12. *Conclusion.*

The remaining questions are questions of accounting. The estate of Bonell Rashti's claims against Bank of America National Association, Bank of New York Mellon, and Specialized Loan Servicing, LLC, will be dismissed with prejudice. Its claims against QBE Americas, Inc., BRIT Insurance, and Certain Underwriters At Lloyd's London will subsist. The long and meretricious complaint insisted on for over a year may have generated a need for an equitable cost adjustment for fees.

Signed on August 24, 2018, at Houston, Texas.

Lynn N. Hughes
United States District Judge